Kelly, J.
(dissenting). The question in this case is whether plaintiffs claims sound in medical malpractice or ordinary negligence. I disagree with the majority’s reading of plaintiffs complaint and believe that all of plaintiffs claims sound in ordinary negligence. I also disagree with the majority’s analysis of the statute of limitations issue.
*434 BACKGROUND
Plaintiff’s decedent was a resident of defendant’s nursing care facility. Among her needs were safety restraints on her bed to prevent her from falling out and injuring herself. In early 1997, defendant’s nurses’ assistants noted that she had developed a propensity to move around in bed. Because of her petite stature and the configuration of the bed, she was in danger of slipping under the bedrails and catching her neck. This could lead to strangulation and death.
Shortly after, the assistants’ fears were realized. First, they discovered plaintiffs decedent “tangled up in the rails,” her clothes, and the bedding. They successfully extricated her, but feared that she was in grave danger of being hanged. Yet, no change was made in the restraint configuration. The next day, she was discovered caught by her neck under the rails. This time, she did not recover. She died two days later after being removed from life support.
Plaintiff brought suit against the facility. Following pretrial motions for summary disposition, plaintiff was allowed to file a first amended complaint in June 1999. She alleged three counts of negligence: ordinary negligence, negligent infliction of emotional distress, and gross negligence.[1] Ante at 417. Central to the resolution of this case is plaintiffs count for ordinary negligence.
The ordinary negligence count consisted of four distinct claims. The first was that defendant, by providing medical care and housing to plaintiffs decedent, *435 owed her decedent a duty to provide an accident-free environment. Defendant had a duty, plaintiff asserted, to assure that plaintiffs decedent was not subjected to an unreasonable risk of injury.
Second, plaintiff asserted that defendant breached its duty to train its staff to recognize the danger posed by bedrails. According to plaintiffs complaint, defendant had received specific information about this danger from the United States Food and Drug Administration (FDA). The allegation is that defendant failed to take precautions or share this information with its staff.
Third, plaintiff asserted that defendant discovered plaintiffs decedent caught between the rails and mattress. Plaintiff complains that defendant failed to prevent a recurrence by not remedying the rails-mattress configuration.
Fourth, plaintiff asserted that defendant had failed to inspect the bed’s configuration to ensure that a danger of strangulation was not present.
Defendant moved for summary disposition under MCR 2.116(C)(7), and the circuit court granted the motion. It determined that plaintiffs ordinary negligence claims were really allegations of medical malpractice.
Plaintiff appealed to the Court of Appeals. She also took measures to preserve her claims as malpractice claims by filing an amended complaint and a notice of intent to sue pursuant to MCL 600.2912b. Defendant moved to dismiss, asserting that the suit was time-barred under the medical malpractice statutory period of limitations. MCL 600.5805(6). When the circuit court held that the statutory period had been tolled, defendant went to the Court of Appeals.
*436 The Court of Appeals consolidated both parties’ appeals. It concluded that plaintiffs claims sounded in ordinary negligence, adding that they would be barred by the limitations period if they sounded in medical malpractice. Unpublished opinion per curiam, issued May 21, 2002 (Docket Nos. 228972, 234992). We granted defendant’s subsequent application for leave to appeal.[2] 468 Mich 943 (2003).
The majority determines that only one of plaintiffs claims sounds in ordinary negligence, that another is not cognizable under Michigan law, and that the other two are medical malpractice claims. It bases its holding on two facts: One, defendant did not respond at all upon finding plaintiffs decedent entangled in her bedding and, therefore, one of plaintiffs claims is for ordinary negligence. Two, the use of bedrails must be prescribed by a medical professional and, therefore, the remaining claims necessarily sound in medical malpractice.
STANDARD OF REVIEW
We review motions for summary disposition under MCR 2.116(C)(7) de novo. We accept the allegations in the complaint and documentary evidence as true unless other documents specifically contradict them. Fane v Detroit Library Comm, 465 Mich 68, 74; 631 NW2d 678 (2001).
MEDICAL MALPRACTICE VERSUS ORDINARY NEGLIGENCE
In Adkins v Annapolis Hosp,[3] we recognized that ordinary negligence could occur in the course of medical *437 care. In this case, plaintiff is alleging that ordinary negligence occurred. She does not dispute that a professional medical relationship existed between defendant and her decedent. But she relies on the established fact that every medical professional remains under a duty to exercise reasonable care. Also, professional standards of medical care supplement but do not necessarily supplant the ordinary duty of care.
Various differences exist between medical malpractice and negligence. When medical malpractice occurs, there has been a failure or omission that cannot be assessed by a layperson; it involves a matter that requires the exercise of professional medical judgment. Without expert testimony, the ordinary juror cannot determine if a defendant medical professional has fulfilled its duty of professional care. Dorris v Detroit Osteopathic Hosp Corp, 460 Mich 26, 47; 594 NW2d 455 (1999). By contrast, expert witnesses are not always required in ordinary negligence actions because the trier of fact can often rely on its own common knowledge and experience. In addition, medical malpractice actions involve the alleged breach of medical standards of care; negligence actions do not.
THE NEGLIGENCE ALLEGED
Here, plaintiffs amended complaint alleged that defendant was negligent in four ways. Defendant is alleged to have breached its duties to
(a) ... assure that plaintiffs decedent was provided with an accident-free environment;
(b) • • • train [nurses’ assistants] to assess the risk of positional asphyxia by plaintiffs decedent despite having received specific warnings ... ;
*438 (c) ... take steps to protect plaintiffs decedent when she was, in fact, discovered on March 1 [1997] entangled between the bed rails and the mattress;
(d) .. . inspect the beds, bed frames and mattresses to assure that the risk of positional asphyxia did not exist for plaintiffs decedent.
With respect to the first claim, I disagree with the majority that plaintiffs assertion of a duty to provide an accident-free environment is not cognizable under Michigan law. Ante at 425-426. We have consistently held that the nature of the claim alleged is based on the underlying facts. It is independent of the words used to describe it. See Dorris at 43.
Plaintiffs decedent was in defendant’s custodial care. As the Court of Appeals stated, defendant was obligated to take reasonable precautions to provide a reasonably safe environment. Unpublished opinion per curiam, issued May 21, 2002 (Docket Nos. 228972, 234992), citing Owens v Manor Health Care Corp, 159 Ill App 3d 684, 688; 512 NE2d 820 (1987). A breach of this duty can support a claim for ordinary negligence. Plaintiffs first claim should be read to mean that defendant was obligated to provide an environment free of negligently caused accidents.
Contrary to the majority’s reading of this claim, plaintiff has not asserted that defendant was the guarantor of the safety of plaintiffs decedent. The ordinary juror can assess whether defendant’s alleged actions or inactions constituted reasonable measures to fulfill its duty.
The second claim is that defendant breached its duty to train its nurses’ assistants. I agree with the majority that assessing the medical needs of patients requires medical expertise. Similarly, assessing whether those needs were adequately addressed requires medical ex *439 pertise. See part IV(B)(2), ante at 426-429. However, a fair reading of this claim reveals that plaintiff is not challenging defendant’s assessment of her decedent’s medical needs. Moreover, plaintiff is not challenging whether bed rails and other restraints were appropriately prescribed.
Instead, plaintiff asserts that defendant knew of the dangers posed by bed rails, yet, it took no steps to pass this information along to its employees. As the majority opines,
[n]o expert testimony is necessary to determine whether [defendant] should have taken some sort of corrective action to prevent future harm after learning of the hazard. The fact-finder can rely on common knowledge and experience in determining whether defendant ought to have made an attempt to reduce a known risk of imminent harm to one of its charges.[4]
“Some sort of corrective action” may include, as plaintiff alleges, training employees or passing along specific information to them that it has learned from other employees or the FDA. Plaintiff asserts that defendant failed to act once it had knowledge of a hazard, not that it breached a medical standard of care. Hence, this claim sounds in ordinary negligence as well.
Plaintiffs third and fourth claims concern defendant’s actions with respect to her decedent becoming entangled in the bedding. Plaintiff alleged that defendant failed to “take steps to protect plaintiffs decedent when she was, in fact, discovered on March 1 [1997] entangled between the bed rails and the mattress” and to “inspect the beds, bed frames and mattresses to assure that the risk of positional asphyxia did not exist for plaintiffs decedent.”
*440 Plaintiff asserts that the nurses’ assistants employed by defendant failed to notify their supervisors when plaintiffs decedent was found caught in the bedrails on the first occasion. Alternatively, plaintiff asserts that a warning was given to the supervisors that they disregarded.
Again, plaintiff states: they “ [negligently and recklessly fail[ed] to inspect the beds, bed frames and mattresses to assure that the risk of positional asphyxia did not exist...” and “to take steps to protect plaintiffs decedent....” These allegations assert the breach of a duty of due care owed by defendant to plaintiffs decedent that can be evaluated by ordinary jurors.
Defendant’s nurses’ assistants were alerted to the danger when two of them first found plaintiffs decedent trapped in the bedrails. One specifically testified that, although she did not comprehend the medical needs of plaintiffs decedent, she recognized that the decedent was in serious physical danger. She expressed to her supervisor her fear that the elderly woman would be found dead if something were not done.
Plaintiff has presented evidence that defendant’s nurses’ assistants did not require medical training to understand that this small, frail person could again slip under the bedrail and jam her neck, endangering her life. Medical training was not needed to instruct them that the bedrail-mattress configuration had to be changed.
Laypersons can properly assess whether the manner in which bedrails and mattresses are configured creates an unreasonable risk of harm to a person like plaintiffs decedent. The claims do not involve the breach of a medical standard of care. They involve simple neglect to act or ordinary negligence, as the majority concedes.
*441 Unlike the majority, I do not place undue emphasis on the fact that the nurses’ assistants had previously discovered plaintiffs decedent in a dangerous position. Ante at 431-432. Any person caring for her could have recognized the danger that the bedding posed to a petite, frail, and elderly person who lacked normal control over her movements.[5]
The danger here was similar to that experienced by an infant in a crib whose mattress is too small and whose rails allow the baby to slip through. Those caring for such a child would quickly recognize the danger, and an expert would not be required to point it out. Similarly, ordinary jurors can assess whether defendant’s caregivers here should have recognized the danger and acted with due care.
As stated earlier in this opinion, the nature of the claim is independent of the words used to describe it. Plaintiff used the proper term “positional asphyxia” to describe being hanged. However, use of the medical term does not transform plaintiffs negligence claim into one sounding in malpractice.
Defendant’s supposition that ordinary people are incapable of recognizing an obvious danger of hanging is untenable, particularly here where untrained people actually did recognize the danger. The assessment of a hazard does not require professional training merely because a professional is capable of assessing it as well and can explain the exact mechanism of the danger. If that were true, a physical science expert would be required in this case as well as a medical one. That *442 expert would be needed to inform the jury how plaintiffs decedent was in danger of strangulation because gravity would pull her down once she slipped beneath the bedrails.
STATUTE OF LIMITATIONS
Generally the period of limitations is tolled at the time the complaint is filed. MCL 600.5856(a). The period for an action premised on ordinary negligence is three years. MCL 600.5805(10); Stephens v Dixon, 449 Mich 531; 536 NW2d 755 (1995). Plaintiffs decedent died in March 1997, and plaintiff brought her action in April 1998. This was well within the period of limitations applicable to ordinary negligence actions, as well as wrongful death actions premised on medical malpractice. MCL 600.5852; MCL 600.5805(6). Still well within the applicable period of limitations, the trial court initially ruled that plaintiffs claim sounded in ordinary negligence. Thus, under MCL 600.5856(a), the period of limitations was tolled.
I believe that plaintiff and other similarly situated litigants are entitled to rely on a trial court’s decision that their case sounds in ordinary negligence. The filing of plaintiffs ordinary negligence complaint tolled the period of limitations, at least until the new trial judge reversed that decision.
“Plaintiffs failure to comply with the applicable statute of limitations” was less the “product of [her] understandable confusion about the legal nature of her claim . . .”[6] and more the product of plaintiffs justifiable reliance on the trial court’s initial ruling.
This Court need not resort to equity to save plaintiffs so-called medical malpractice claims. MCL 600.5856(a) *443 and the initial trial court decision dictated that plaintiffs filing of the ordinary negligence complaint tolled the running of the period of limitations.
Finally, the majority’s “prudent” decision that obliges someone injured by a negligent medical practitioner to allege alternate theories of medical malpractice and ordinary negligence pertaining to a single injury is ill-conceived. It needlessly complicates and impedes the injured person’s efforts to recover through the courts from those responsible for his plight. The majority’s free and unsolicited advice sends the wrong message to the bench and bar, and places an undue burden on injured people.
CONCLUSION
In this case, plaintiff has alleged that defendant had notice of a risk of harm that was readily apparent to the layperson and could have been rectified by a layperson. She has also alleged that, after receiving notice of the danger, defendant negligently missed several opportunities to avert it.
Medical expertise is not required to determine whether defendant’s nonresponses constituted a failure to take ordinary care. An expert could render an opinion on the issues in this case, but it is unnecessary because the case does not raise questions of medical judgment. It does not involve the breach of medical standards of care. Instead, the issues are within the common knowledge and experience of lay jurors. Hence, plaintiff should be enabled to proceed under a theory of ordinary negligence.
Moreover, if any of plaintiffs claims did sound in medical malpractice, more than the equities of this case require that plaintiff be allowed to proceed; plaintiff *444 reasonably relied on the decisions of the lower courts that all her claims sound in ordinary negligence.
The decision of the Court of Appeals should be affirmed to the extent that it found that all of plaintiffs claims sound in negligence.
CAVANAGH, J., concurred with KELLY, J.

 Plaintiff alleged that defendant negligently inflicted emotional distress on her by attempting to conceal the true circumstances of her decedent’s death. The third count alleged that the nurses’ assistants were grossly negligent for failing to inform their supervisors that they had found decedent entangled in her bedding the day before her death.

 We also ordered that the case be argued and submitted with Lawrence v Battle Creek Health Systems, 468 Mich 944 (2003).

 420 Mich 87; 360 NW2d 150 (1984). See also Dyer v Trachtman, 470 Mich 45, 54 n 5; 679 NW2d 311 (2004).

 See ante at 430-431, discussing plaintiffs claim for defendant’s failure to respond after initially finding plaintiffs decedent entangled in her bedding.

 One nurses’ assistant testified that she recognized the dangerous bedding arrangement that entangled plaintiffs decedent on a previous occasion even though she was not plaintiffs decedent’s usual caregiver. This assistant had not had an opportunity to observe plaintiffs decedent for a prolonged period.

 Ante at 432.